GEOFFREY A. HANSEN
Acting Federal Public Defender
Northern District of California
ANGELA M. HANSEN
Assistant Federal Public Defender
13th Floor Federal Building - Suite 1350N
1301 Clay Street
Oakland, CA 94612
Telephone:   (510) 637-3500
Facsimile:    (510) 637-3507
Email:        Angela_Hansen@fd.org

Counsel for Defendant TANG

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DELANEY TANG,<br><br>Defendant. | **Case No.:** CR 21–00057 HSG<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br>**Hearing Date:**   December 8, 2021<br>**Hearing Time:**   10:00 a.m. |

1

## INTRODUCTION

Delaney Tang committed the offense of the solicitation of child pornography when he was 20 years old and suffering from depression, anxiety and post-traumatic stress disorder.  Withdrawing from the world, he closed the door to his room and spent all his hours consuming internet content.  Gaming and chatting on Instagram with strangers, he disconnected from the people around him.  Being at home without a job or a relationship exacerbates many internet addictions, as we have seen during this global pandemic.  And the internet is full of dark and sick content.  We see it in absurd conspiracy theories and in hate-filled sites encouraging violence.  Sadly, part of the sick nature of online content includes photographs and videos of the horrific sexual abuse of children.

But in this case, after a thorough search of his computers, his Instagram account and his devices, the government did not uncover evidence that Mr. Tang ever successfully employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct as that term is defined in 18 U.S.C. § 2256(2).  Rather, Mr. Tang's conduct was to attempt to coerce his minor victims to engage in sexually explicit conduct.  The photos and videos that the victims ultimately did send to Mr. Tang did not include sexually explicit conduct as that term is defined in Section 2256(2).

In short, this case does not involve either the actual production of child pornography or the possession of images of child pornography.  Nevertheless, no one disputes the terrible nature of Mr. Tang's conduct or his cruel and hurtful attempts to obtain these images from teenage girls over Instagram.  Mr. Tang's acceptance letter to the Court, Exhibit A, acknowledges both the harm he caused his victims and the serious human cost of his actions.

Today, Mr. Tang is working hard in therapy to understand his behavior in this case and to understand the roots of his depression and anxiety, illnesses that led him to his current predicament.  He has been attending intensive group and individual therapy sessions for about a year to process his conduct in this case.  Most importantly, he has been evaluated by one of the most distinguished and

experienced forensic psychiatrists in the country, who determined that Mr. Tang has underlying psychiatric issues that contributed to the offense and is thus someone who can be redeemed with non-custodial interventions.  Indeed, Mr. Tang's behavior on pretrial supervision confirms that he requires treatment, counseling, and community supervision to address the offense conduct and that such interventions can and will succeed.

Mr. Tang is not requesting a downward departure from the advisory Guidelines range.  He is not requesting a downward variance.  Nor is he asking for a low-end custodial sentence.  The sentence he seeks is significant, it is years higher than the advisory Guidelines range, and it is the mandatory minimum sentence prescribed by the statute.  It is also the sentence recommended by the government in this case.  The probation office's extraordinarily high recommendation of 96 months is 66 months higher than the low end of the advisory Guidelines range and 36 months more than the statutory mandatory minimum.  Its recommendation is based primarily on the offense conduct, to the exclusion of the other statutory sentencing factors, especially Mr. Tang's youth, lack of criminal record, and traumatic background and history.  Given the many other collateral consequences of this conviction -- including lifetime sex-offender registration -- five years in federal custody and nearly a decade of supervised release for a young man with Mr. Tang's background and history is more than sufficient to satisfy the goals of sentencing. For these reasons and the reasons set forth below, a measured and fair custodial sentence in this case is the one jointly recommended to the Court by the defense and the government.

## ARGUMENT

## I. A FIVE-YEAR CUSTODIAL SENTENCE IS MORE THAN SUFFICIENT TO ACHIEVE THE GOALS OF SENTENCING

The Court is familiar with the directives of *United States v. Booker*, 543 U.S. 220 (2005), and 18 U.S.C. § 3553(a).  The Sentencing Guidelines range is not mandatory, and the Court has a duty to exercise judgment and discretion in arriving at an appropriate sentence.  Section § 3553(a) "contains

an overarching provision" directing the district court to impose a sentence that is "sufficient, but not greater than necessary, to comply with" the purposes of sentencing. *Kimbrough v. United States*, 552 U.S. 85, 101 (2007).

In crafting a sentence that is "sufficient, but not greater than necessary" to comply with the purposes set forth in 18 U.S.C. § 3553(a), the Court must consider the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; and (C) to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2). It also must consider the nature and circumstances of the offense and the history and characteristics of the defendant, as well as the need to avoid unwarranted sentence disparities among similarly situated defendants. 18 U.S.C. § 3553(a)(1), (a)(4) and (a)(6).

The probation office's apparent main focus here is just one of these statutory subsections, § 3553(a)(2)(A) -- "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense." The Supreme Court has explained that this factor falls within the sentencing rationale of "retribution." *Tapia v. United States*, 564 U.S. 319, 326 (2011) (explaining that "a court may not take account of retribution (the first purpose listed in 3553(a)(2)) when imposing a term of supervised release"; emphasis omitted). "The goal of retribution" is the "interest[] in seeing that the offender is repaid for the hurt he caused." *Kennedy v. Louisiana*, 554 U.S. 407, 442 (2008). Yet the Supreme Court has warned that "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Gall v. United States*, 552 U.S. 38, 54 (2007) (quotations omitted).

In short, this Court has the authority and responsibility in this case to impose a sentence that is no greater than necessary in light of all the facts before it. The advisory Guidelines are one of many factors the Court must consider here. Mr. Tang submits that the advisory range, and all of the sentencing factors addressed below, weigh in favor of the parties' recommended sentence, including the "real conduct and circumstances" of Mr. Tang's youth, difficult upbringing and mental health, as

1    well as his efforts at rehabilitation while on pretrial release.

2         **A.    The Sentencing Guidelines**

3         As with any sentence in federal court, we must start with the federal Sentencing Guidelines.  In

4    this case, the advisory Guidelines range of 30 to 37 months clearly indicates that the sentence of 60

5    months recommended by Mr. Tang and the government is more than reasonable here.

6         The applicable Guideline for the solicitation of child pornography is § 2G2.2.  Mr. Tang starts

7    at base offense level 22.  This base offense level is then increased by two because Mr. Tang used a

8    computer to commit the offense.  *See* U.S.S.G. § 2G2.2(b)(6) ("if the offense involved the use of a

9    computer or an interactive computer service . . . increase by 2 levels").  He then is entitled to a two-

10   level *reduction* under § 2G2.2(b)(1) because the government recovered no actual images of child

11   pornography as that term is defined under federal law.  In other words, although Mr. Tang attempted

12   to obtain child pornography, no illegal images were obtained, produced, shared or distributed.  His

13   conduct was limited to the "solicitation of material involving the sexual exploitation of a minor," and

14   he did not "traffic in" or "distribute" any such material.  U.S.S.G. § 2G2.2(b)(1).

15        After applying the two-level increase and the two-level reduction, the resulting offense level is

16   22, which is reduced by three levels for acceptance of responsibility for a final adjusted offense level

17   of 19.  At offense level 19, Criminal History Category I, the advisory Guidelines range is 30 to 37

18   months.  PSR ¶ 101.  Because the offense of conviction requires a mandatory minimum sentence of

19   60 months, the Court must impose a sentence significantly above this advisory range.  U.S.S.G. §

20   5G1.1(b).

21        **1.    Probation's recommended sentence does not track the actual Guidelines
              instruction for dealing with multiple victims**
22

23        The parties agreed on a 60-month sentence.  Even though that the statutorily required minimum

     sentence is significantly higher than the top of the applicable Guideline range, the probation office
24
     recommends that the Court impose a sentence of 96 months, or eight years in federal custody -- three
25
     years longer than the statutory minimum.
26

27        Although the probation office often relies uncritically on the applicable advisory Guidelines

28   range in making sentencing recommendations, in this case it seemingly ignores the fact that, without

---

DEFENDANT'S SENTENCING MEMORANDUM
*TANG*, CR 21–00057 HSG

1   actual images of child pornography, the advisory Guidelines call for a much lower sentence.  Instead,

2   the probation officer argues for a much higher sentence primarily because Mr. Tang targeted multiple

3   victims:

4           Aggravating factors in this case include Mr. Tang's *active and repetitious*
        *participation* in soliciting at least eight female minors to engage in
5           sexually explicit conduct. One minor was as young as 11 years old. While
        Mr. Tang was charged and convicted of only one count of Solicitation of
6           Child Pornography, which calls for a statutorily minimum sentence of 60
        months, *he clearly engaged in similar conduct against several minors of*
7           *which are not taken into account in the custodial guideline range*.

8   PSR, Recommendation at 2 (emphases added).

9           But the probation officer's recommendation is not tethered in any way to how the Guidelines

10  might account for multiple victims.  For example, if Mr. Tang had been charged in multiple counts,

11  or if the multiple-count rule were to be applied by analogy to account for "at least eight" victims, to

12  address the probation office's understandable concerns, Mr. Tang's offense level would be increased

13  by five levels.  *See* U.S.S.G. § 3D1.4 (a) ("Count as one Unit for the Group with the highest offense

14  level.  Count one additional Unit for each Group that is equally serious or from 1 to 4 levels less

15  serious" up to five Units). [1]  With the maximum five levels added pursuant to the table in Section

16  3D1.4, Mr. Tang's adjusted offense level would increase from 19 to 24, and the advisory range would

17  increase from 30 to 37 months to 51 to 63 months.

18          The parties' requested sentence is at the top end of that higher range.  In other words, the 60-

19  month sentence recommended by the government more than accounts for the multiple victims in this

20  case.  *See* Gov. Sent. Memo at 14, n.8 ("If Tang had pled to solicitation and/or cyberstalking charges

21  for Minor Victims 1-3, 5, 7, and 8, his combined total offense level would have been 24 and his

22  Guideline range would have been 51-63 months.").  This was a thoughtful plea negotiation.  The

23  government chose to proceed with a solicitation of child pornography charge knowing and

24  understanding the facts of this case and the nature of the offense conduct, and that Mr. Tang would be

25  required to serve a half-decade in federal prison.  It did not agree to dismiss this serious count and

26

27  ─────────────────────

28  [1] In contrast to the Guidelines-based five-level increase, the probation office's recommended
    sentence is equivalent to an *eleven-level* enhancement.

1   proceed only with the cyberstalking charge in Count Two, as it did for Mr. Tang's co-defendant.

2   PSR ¶¶ 1, 6.  Mr. Tang likewise considered and understood the government's position and accepted

3   the offer, understanding that the government would recommend that he be required to serve five

4   years in federal custody.  Plea Agreement ¶ 16 ("The government agrees to recommend a 60-month

5   sentence, unless the defendant violates the terms of the Agreement above or fails to accept

6   responsibility.").  In exchange for that recommendation, he agreed to waive indictment and forego

7   any ligation in this matter.  PSR ¶ 3.

8          The Court should honor the parties' agreement and recognize that the sentence recommended

9   in the plea agreement is not an act of leniency, a downward variance, or a departure.  It constitutes a

10  significant punishment that more than accounts for the aggravating factors identified by the probation

11  office.

12          **B.      Mr. Tang's History and Characteristics**

13         Mr. Tang's background and history, including his childhood trauma, his mental health, and his

14  youth at the time of the offense, as well as his current efforts at rehabilitation, are all sentencing

15  factors that, pursuant to 18 U.S.C. § 3553(a)(1), support the parties' requested sentence.

16          **1.      Mr. Tang's childhood trauma and resulting depression**

17         Mr. Tang was born in Oakland, California.  His mother abandoned him when he was just one

18  year old.  He has no memory of her at all.  PSR ¶ 80-81.  It is difficult for Mr. Tang to understand

19  why his mother abandoned the family.  He was told only that she did not want the responsibility of

20  raising children.  PSR ¶ 81.  When discussing his mother and her absence in his life during the

21  probation interview, Mr. Tang became emotional and began crying.  *Id*.  He has not processed the

22  loss of his mother and her choice to abandon him.

23         Mr. Tang's father, a hard-working Laotian immigrant, worked long hours to support the family

24  and was out of the home during most of Mr. Tang's childhood.  As a result, Mr. Tang was raised by

25  his paternal grandmother and his aunt, Chai Saeturn.  *See* Chai Saeturn Letter, Exhibit B.  Mr. Tang's

26  grandmother was a refugee with her own trauma.  Lauren Saeturn Letter, Exhibit C.  She loves her

27  grandchildren and made sure they were "well fed and clean," but she was not capable of "supporting"

28  them in "any other way."  *Id*.  Mr. Tang's older sisters had each other, but Mr. Tang felt very alone

1    and did not have anyone to turn to as a child.  Exhibits B and C ("Delaney was the only boy in the

2    family and didn't really have any role models or guidance.  [My sisters and I] had each other to

3    confide in about our emotional issues.").  Mr. Tang's aunt, Ms. Saeturn, had her own child and thus

4    was not always present to protect or support her nephew.  Exhibit B.

5         As the only boy in the family, Mr. Tang was the target of his paternal uncle's drunken

6    rampages.  Mr. Tang's uncle lived in the family home with Mr. Tang's father and grandmother.  His

7    uncle physically abused Mr. Tang with objects such as hangers, and he also verbally humiliated his

8    nephew.  PSR ¶ 82.  The abuse started in elementary school and was often triggered by the smallest

9    of things.  For example, his uncle abused Mr. Tang when he mistakenly used his uncle's English

10   name, or when Mr. Tang reported feeling ill and stayed home from school.  *Id*.  His uncle kicked Mr.

11   Tang out of the house when he was in middle school and made him "walk barefooted at night" to his

12   aunt's home.  *Id*.  His uncle followed him in a car and yelled at him along the way. *Id*.

13        This experience "made [Mr. Tang] feel powerless" in "not having any control of his situation."

14   Exhibit B.  To this day he still feels "traumatized" by his uncle and by the fact none of the other

15   adults in his life stopped him.  PSR ¶ 82.  As a result, Mr. Tang had feelings of depression and

16   thoughts of suicide as a child.  When he disclosed these emotions to his father, Mr. Tang's father told

17   him he would have to "deal with it on his own."  This made Mr. Tang recoil further inward, and yet

18   no one in his life ever asked, "What's going on with Delaney?"  PSR ¶ 83.

19        School was particularly difficult for Mr. Tang.  He felt depressed in both middle school and

20   high school and did not know what to do with those feelings.  Exhibit A.  These feelings were

21   exacerbated when he was bullied for "speaking with a lisp" and because of his "weight issues."

22   Exhibit A; *see also* PSR ¶ 84 (explaining that Mr. Tang was teased at school and was "emotionally

23   unable to fit in").  As a result, Mr. Tang dropped out of high school in 10th grade.  His family

24   "commented and criticized him for not going to school or working," but they did not "encourage him

25   to return to school."  PSR ¶ 84.  What Mr. Tang really needed was adult emotional support, but it was

26   instilled in him at a young age not to talk about "family problems" because it would bring "shame to

27   the family."  Exhibit A.  From these experiences, Mr. Tang learned to "bottle up everything inside."

28   *Id*.  This neglect led Mr. Tang to the internet, where he began making on-line connections and

1   playing games throughout most of the day.  PSR ¶ 84.

2       In trying to assess what led Mr. Tang to this offense, Ms. Saeturn realizes that the only place

3   where her nephew probably "felt he had a sense of control in his life was behind a [computer]

4   screen."  Exhibit B.  He appeared to have been "lost in the dark" for a very long time.  *Id*.  She wishes

5   her family had believed in mental health treatment; if Mr. Tang had received that support earlier in

6   life "we may not find ourselves in this predicament today."  *Id*.

7       Ms. Saeturn's assessment of her nephew as having been "lost in the dark" in his teen and early-

8   adult years is confirmed by a psychiatric report prepared by Dr. Mark Mills.[2]  Dr. Mills is one of the

9   most distinguished forensic psychiatrists in the country and has extensive experience with sex-related

10  criminal cases.  Exhibit D.  He has spent 34 years practicing forensic psychiatry; he was the

11  commissioner of mental health in Massachusetts; and he worked as the director of psychiatric

12  evaluations at one of the largest hospitals in the country.  *Id*.

13      Dr. Mills' psychiatric testing of Mr. Tang confirmed that he suffers from depression and

14  anxiety.  Dr. Mills Report at 3-4.  Test results further confirm that Mr. Tang is socially distant and

15  struggles to connect socially.  *Id*. at 4.  Mr. Tang is "best diagnosed as having a Major Depressive

16  Disorder, the most serious of the depressive disorders."  *Id*. at 3.  According to Dr. Mills' test results,

17  Mr. Tang also "appears to suffer from Post-Traumatic Stress Disorder, presumably from his violent

18  upbringing."  *Id*.  Finally, "even more than being emotionally dysfunctional, he suffers from thought

19  dysfunction, test jargon for having delusions and ideas of persecution."  *Id*.

20      To Dr. Mills, these diagnoses are important because "Mr. Tang initially appears calm and

21  rational; while he expresses his regret, it is easy for others to dismiss such regret as more about

22  having been caught than regret for the way he treated his victims."  *Id*. at 4.  However, the testing

23  "opens the door on another aspect of his behavior: contrary to his appearance, he is not calm; instead,

24  he is anxious, wary and depressed."  Mr. Tang "is desperate for some supportive guidance, or more

25  accurately, desperate to experience some loving parenting."  *Id*.  In Dr. Mills' professional opinion,

26

27

28  [2] Dr. Mills' psychiatric report, with the underlying testing data, was filed on December 2, 2021 with
    an application and proposed order to seal these materials.

1   Mr. Tang "acted seemingly without compassion because he has received so little himself."  There is

2   no doubt that Mr. Tang has "behaved both badly and illegally; however, in the testing one clearly

3   sees the intrapsychic toll of his [emotionally] impoverished upbringing."  *Id.*

4        Trauma during childhood creates higher risks for negative outcomes in life, including

5   diminished health and life opportunities.[3]  Mr. Tang has PTSD, depression, anxiety, and a verified

6   history of trauma and abuse.  His life was difficult from the outset.  Dr. Mills Report at 4; *see also*

7   PSR ¶ 58 (listing Mr. Tang's Adverse Childhood Experiences score as six out of ten; the higher the

8   score, the higher the defendant is at risk for "major chronic health, mental health, economic health

9   and social health issues.").  Mr. Tang's trauma does not in any way excuse the fact that he committed

10  this internet crime against multiple young victims.  Mr. Tang is remorseful and accepts responsibility

11  for the decisions he made and the harm that he caused his victims.  Exhibit A.  Nevertheless, the facts

12  about his own background and its ongoing effects on his mental and emotional condition are relevant

13  to the Court's sentencing determination.  Any sentence imposed in this case should take into account

14  the "real conduct and circumstances" of Mr. Tang's history of trauma and his resulting mental health

15  issues that require medical intervention.  Dr. Mills Report at 2 (opining that Mr. Tang's mental

16  deficiencies should treated with therapy and medication).

17                    **2.    Mr. Tang's awakening and hard work on pretrial release**

18       Since his arrest, Mr. Tang has been working hard in therapy to "reflect on his past negative

19  behaviors and how it has affected everyone in his life, including the victims."  Exhibit A.  On his

20  journey, he is fortunate to have the support of his family.  His aunt and sisters understand that he

21  needs mental health interventions, and they will be there for him when he gets out.  Exhibits B and C.

22  His aunt, Ms. Saeturn, is a social worker who will be able to connect Mr. Tang with "community-

23  based programs and will advocate for him."  PSR ¶ 86.

24       Ms. Saeturn has seen the growth and work that Mr. Tang has put in over this last year to

25  "become a better person."  Exhibit B.  He is participating in both individual and group therapy.  *Id.*;

26  _____

27  [3] *See* Rhitu Chatterjee, "CDC: Childhood Trauma is a Public Health Issue and We Can Do More to
    Prevent It," *National Public Radio*, Nov., 2019, https://www.npr.org/sections/health-

28  shots/2019/11/05/776550377/cdc-childhood-trauma-is-a-public-health-issue-and-we-can-do-more-
    prevent-it.

*see also* PSR ¶ 90.  He has enrolled at Five Keys School to get his GED, and he has been working

with his teacher "consistently to study for the GED exam."  Exhibit B; PSR ¶ 94.  His final two tests

are this week.  Exhibit B.  To Ms. Saeturn, over this last year Mr. Tang has immersed himself in

programming.  He is doing all he can during the pandemic and under serious limitations of release to

improve himself.  And during this process, he did not give up.  Ms. Saeturn described observing Mr.

Tang's awakening:

> I think one of the most beautiful things I have seen is watching the light
> come on in someone's eyes when they've been lost in the dark so long.
> Everyone make mistakes in life, and sometimes good people make bad
> choices. It's easy to judge. It's more difficult to understand. Understanding
> requires compassion and a willingness to believe that good heart
> sometimes choose poor methods.

Exhibit B.  Mr. Tang's sister Lauren, and his aunt Liew Saeturn, also have seen the recent changes in

him.  Exhibit C; Liew Saeturn Letter, Exhibit E.  Lauren reports that her brother's remorse is sincere:

he is "truly sorry" for what he did to the victims.  Exhibit C.  He wants to do the "right thing" and she

hopes the Court will give him have a second chance to become a productive member of society.  *Id*.

His aunt, Liew, echoes this sentiment, explaining that her nephew is "truly remorseful for his

actions."  She has seen "improvements in his behavior and he is moving in a positive direction with

his life."  Exhibit E.

The Court may consider "post-crime maturation and self-rehabilitation" at sentencing.  *United

States v. Ruff*, 535 F.3d 999, 1003 (9th Cir. 2008).  The Supreme Court has "made clear that post-

sentencing or post-offense rehabilitation -- particularly in light of its tendency to reveal a defendant's

likelihood of future criminal conduct -- [is] a critical factor to consider in the imposition of a

sentence."  *United States v. Trujillo*, 713 F.3d 1003, 1010 (9th Cir. 2013) (citing *Pepper v. United

States*, 562 U.S. 476, 491-93 (2011), and *Gall*, 552 U.S. at 59).  Such rehabilitation is "the most up-

to-date picture" of a defendant's history and characteristics, which in turn sheds light on whether a

defendant will be deterred from committing another crime.  *Pepper*, 562 U.S. at 492 (quoting 18

U.S.C. § 3553(a)(1)).

In this case, Mr. Tang's post-offense rehabilitation and maturation, as verified by his family,

has been extraordinary.  And the interventions he has sought out are consistent with the treatment that

1   Dr. Mills recommends for Mr. Tang.  *See* Dr. Mills Report at 5 (recommending therapy, medication

2   and career and employment desires to address Mr. Tang's severe depression and other emotional

3   disturbances).  For these reasons, the Court should consider Mr. Tang's post-offense maturation and

4   progress on supervision to impose a sentence of no more than five years in custody.

5              **3.       Mr. Tang's youth at the time of the offense**

6              Another mitigating factor related to Mr. Tang's background and history is his age at the time of

7   the offense.  He turned 22 earlier this year, and he was just 20 years old when most of the offense

8   conduct occurred.  For federal defendants generally, that is young.  Defendants between the ages of

9   21 to 25 made up only 12.6% of all federal defendants sentenced in fiscal year 2020.  U.S.

10  Sentencing Commission 2020 Sourcebook of Federal Sentencing Statistics Table 7, Age of Offenders

11  by Type of Crime."[4]  The Sentencing Commission recognizes that a defendant's young age is a

12  relevant sentencing consideration.  The Guidelines note that "age (including youth)" is a relevant

13  sentencing consideration "individually or in combination with other offender characteristics, [when]

14  present to an unusual degree and distinguish the case from the typical cases covered by the

15  guidelines."  U.S.S.G. § 5H1.1.

16             Mr. Tang's age at the time of the offense also is significant in light of the Sentencing

17  Commission's acknowledgment of neurological research showing that brain development is not fully

18  realized in most people until they are 25 years old.  Researchers have found that the prefrontal cortex

19  of the brain -- which "is utilized in impulse control, emotional reactions, executive function and

20  decision making" -- is the last part of the brain to develop.  It "is not complete by the age of 18 …

21  development continues into the 20s" and "most researchers reference 25 as the average age at which

22  full development has taken place."[5]

23             In other words, research shows that the brain of a defendant like Mr. Tang, who committed a

24  crime at the age of 20, is closer to the brain of a teenager.  Thus, as even the government notes, Mr.

---

[4] The entire sourcebook is available online at https://www.ussc.gov/research/sourcebook-2020.

[5] U.S. Sentencing Commission, "Youthful Offenders in the Federal System," May 2017, at 6, 7, *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170525_youthful-offenders.pdf.

1    Tang's young age is an important sentencing factor that should be weighed in imposing a sentence.

2    *See* Gov. Memo at 14 (explaining that the government weighed Mr. Tang's age at the time of the

3    offense).  Moreover, Mr. Tang's age is an appropriate ground for a downward variance under §

4    3553(a).  Mr. Tang is not seeking a variance but, at a minimum, his age at the time of the offense

5    conduct is another basis supporting the sentence recommended by the parties rather than the one

6    recommended by the probation officer.

7         **C.**     **The Nature and Circumstances of the Offense**

8         There is no easy explanation for what leads a good person to engage in the type of conduct in

9    this case.  Mr. Tang's conduct was unacceptable.  He understands that bullying and intimidating his

10   victims to attempt to get them to produce pornographic images was reprehensible and criminal.

11   Exhibit A.  He recognizes that he caused each victim tremendous trauma and stress:

12   

13           From the bottom of my heart, I am very sorry for the actions I've done
     which has caused harm to the victims. I regret what I did, and I wish I

14           could take it all back. I will never grow unless I recognize what I have
     done is wrong. No one deserves to be treated the way I have treated them.

15           I have sisters and aunts and cousins all of whom I would never wish this
     upon. I know my apology may not hold any meaning right now, but all I

16           can do is to continue to work on bettering myself as a person. It does not
     erase what I did. I am making a commitment to myself to heal all of my

17           scars, because it's everything I do after sorry that proves who I really am.

18                                 * * *

19           To the victims, I hope your heart gets healing. I hope the trauma that I
     have caused no longer block your view of the present. I hope you breathe

20           again, laugh again, and live again. I am truly sorry.

21   *Id.*

22        At the time of the offense, Mr. Tang was young, immature, inwardly focused, and in a dark

23   place.  In fact, as described in the background and history section above, Dr. Mills confirms that he

24   was "depressed, anxious, periodically psychotic, prone to the idea of persecution, socially distant and

25   unable to connect socially."  Dr. Mills Report at 3.

26        Dr. Mills determined that Mr. Tang's emotional disturbances stem from his past trauma, and

27   "that his cultural imperatives which counsel stoicism have failed to hide his misery or, most sadly, to

28   restrain him from acting out his immature (and illegal) fantasies."  *Id.* at 4.  "This then is where the

PRS is inadequate: it artfully describes with vivid quotations how Mr. Tang importuned his juvenile victims but fails in connecting his emotionally impoverished upbringing and his ongoing psychopathology with his emotionally impoverished behavior." *Id*. Dr. Mills opines that because Mr. Tang's behavior in this case "stemmed from his own psychopathology," an eight-year custodial sentence is "unreasonable." *Id*.

Notably, Mr. Tang has no history of sexual deviancy and, in this matter, Dr. Mills "do[es] not believe that Mr. Tang is a pedophile; instead, he was seeking images with what he hoped would be compliant young women. But even then his tactics were not successful" in that they never provided him images that would legally qualify as child pornography. *Id*. at 5.

Moreover, Mr. Tang has expressed genuine remorse regarding his behavior. During his therapy and group sessions, he got in touch with his feelings of shame and remorse. Exhibit A. He also expressed in his letter to the Court his sincere understanding of how his victims were harmed. *Id*. In his letter, he admits that at the time of the offense, he was a "very weak person" and that he hurt a number of people:

> I couldn't see my own strengths because I have been broken down for so long, often feeling so out of place in life, and unfortunately I hurt a lot of people along the way. If I had a magic wand today, I would hold the hand of my younger self and whisper to him what I know now. I would guide him down what the right choices are, ask for help, stop numbing or avoiding the wounds, and to choose healing instead.

Exhibit A.

Importantly, Dr. Mills concluded that Mr. Tang is amenable to interventions for his emotional deficiencies; with therapy and medication, his condition can improve and "significant recovery is more than possible." Dr. Mills Report at 5. As a result, Mr. Tang should continue to engage in therapy and treatment while serving the community-supervision portion of his sentence to help him address and continue to explore his behavior during the controlling offense. The underlying purposes of sentencing include not only punishment and deterrence, "but also the provision of treatment to a defendant in need of it." *United States v. Bad Marriage*, 392 F.3d 1103, 1114 (9th Cir. 2004) (citing 18 U.S.C. § 3553(a)(2)(D)). Indeed, given Mr. Tang's need for treatment and Dr. Mills' opinion that such interventions can succeed here, "any sentence over the minimum of five years is unnecessary and would be excessively punitive notwithstanding the offense conduct." Dr. Mills Report at 5.

1
2
3
4
5
6

For all these reasons, the Court should consider Dr. Mills' psychiatric assessment of Mr. Tang and his recommendation that Mr. Tang obtain necessary treatment to alleviate his depression, anxiety, and other conditions.  Mr. Tang's mental health and his need for treatment are factors the Court can and should consider in fashioning an appropriate sentence to address the nature of the offense conduct.

7

### D.   The Need to Reflect the Seriousness of the Offense, to Promote Respect for the Law and to Provide Just Punishment

8
9
10
11

A sentence of 60 months in custody is a lengthy sentence.  A half-decade in custody for a young defendant who has no prior arrests or convictions is a significant punishment.  It will promote respect for the law and provide a just punishment for the offense conduct, and it will provide a sufficient general deterrent that cyberstalking minors for pornography will not be tolerated.

12
13
14
15
16

If one considers personal deterrence, Mr. Tang does not need several more years in prison over the five years recommended by the government to punish him for his conduct.  What additional benefit is derived from incarcerating him for an additional three years, especially given that his punishment does not end after he serves his time?  Mr. Tang will be a convicted felon, and he will be supervised for nearly a decade after his release.

17
18
19
20
21
22
23
24
25
26

In addition, an important collateral consequence of this conviction is the dramatic effect it will have on Mr. Tang's future.  He will be required to register as a sex offender and will labeled as such and monitored for life.  Even after his long period of supervision expires, there will be restrictions on where he can live and what he can do until his death.  He will be unable to go certain places that might put him into unsupervised contact with minors, and he will be unable to live within a certain distance from parks and schools.  To be convicted of a federal crime related to child pornography entails automatic *lifetime* continuous punishment:  "being marked as a pariah with severe restrictions on residence, movements, activities and associations."  *United States v. R.V.*, 157 F. Supp. 3d 207, 210-11 (E.D.N.Y. 2016).  Adding "unnecessary" and "unduly long" periods of incarceration to such a sanction is "inappropriate and it should be avoided."  *Id.*

27
28

Moreover, a long term of supervised release is more suited to address the offense conduct than requiring a defendant like Mr. Tang to spend any more time in custody than is necessary.  The

1   probation office has services available to treat and address the needs of a defendant in a case such as

2   this one.  It can and does require sex offender therapy and group therapy, as well as conditions of

3   release that include computer monitoring and internet restrictions.  Our probation office is excellent

4   at supervising defendants in cases like these, and it has systems in place to help ensure that a

5   defendant does not reoffend.  Moreover, as his model behavior on pretrial release suggests, Mr. Tang

6   already has received the message that he cannot re-offend.  He is engaging in and appreciative of

7   therapy and has had many important insights into his own behaviors.  In his letter to the Court, for

8   example, he admits that at the time of the offense, he was a "very weak person on the inside," and he

9   credits his awakening to the therapy and treatment he is receiving through pretrial services.  He

10  wishes he had received this treatment "early on in [his] life."  Exhibit A.

11          Finally, retribution is not a sufficient reason here to impose the sentence suggested by the

12  probation office.  Rather, in light of all of the factors addressed above, the 60-month sentence

13  recommended by the parties, together with eight years of supervised release, meets the goals of

14  sentencing, including retribution.  Two years ago Mr. Tang went down a rabbit hole of depression

15  and anxiety, and he became consumed with the internet, disassociated from reality, and closed

16  himself off from real-world connections.  His mental-health disorders are illnesses that require

17  treatment; with therapy similar to the group and individual counseling he has engaged in over the last

18  year, he is not likely ever to spiral back into the same place where he found himself when he was

19  arrested last year.  *See* Dr. Mills Report at 5 (concluding that "with medication . . . Mr. Tang's

20  conditions should improve . . . to the point where after his release he could reasonably continue with

21  therapy and engage more deeply with psychotherapy.").  Indeed, Mr. Tang has been working hard to

22  address the issues that led him to behave as he did when he committed this offense.  Exhibit A, PSR

23  ¶¶ 90, 94.

24          In the end, this case is less about retribution and more about rehabilitation and redemption.  Mr.

25  Tang must be punished, of course, but he also can also be rehabilitated, as confirmed by Dr. Mills

26  and by his current work on pretrial release.  Mr. Tang is making progress in therapy, and the Court

27  has the power to give him the opportunity -- after five years in custody -- to continue to rehabilitate

28  himself with the mental-health interventions recommended by Dr. Mills.  Dr. Mills Report at 5.

Congress cautioned courts to recognize that "imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). The Supreme Court has explained that district courts cannot increase the length of a sentence in order to provide a defendant with rehabilitative services; rather, a court determining the length of a prison sentence "should consider the specified rationales of punishment *except for* rehabilitation, which it should acknowledge as an unsuitable justification for a prison term." *Tapia*, 564 U.S. at 327 (emphasis in original). Mr. Tang understands that a custodial sentence is required in this case as a punishment. He is not asking the Court for a variance from the advisory Guidelines, nor is he asking for a low-end sentence. He joins the government in requesting a sentence of 60 months in custody, which is the mandatory minimum sentence required by statute. This sentence is 30 months higher than the low-end of the advisory Guidelines range for his offenses and, when coupled with a lengthy term of supervised release, sex offender treatment and sex-offender registration, this custodial term is more than sufficient to achieve the goals of sentencing.

## CONCLUSION

Mr. Tang respectfully asks the Court to consider all the information above and to impose no more than a 60-month sentence, followed by a term of supervised release that will allow the probation office to provide treatment and intensive monitoring of Mr. Tang for eight more years. This sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing. He further requests that the Court sentence him to a facility as close to the Bay Area as possible. Finally, Mr. Tang requests that the Court permit him to self-surrender to his designated institution by a date in mid-January 2022.[6]

---

[6] The probation office recommends that Mr. Tang be permitted to self-surrender (PSR, Recommendation at 3), and the government advised the defense that it does not oppose Mr. Tang's request to self-surrender in mid-January 2022.

DEFENDANT'S SENTENCING MEMORANDUM
*TANG*, CR 21–00057 HSG

1

2   Dated:       December 2, 2021                    Respectfully submitted,

3                                                    GEOFFREY A. HANSEN
4                                                    Acting Federal Public Defender
                                                     Northern District of California
5
                                                     _____
6                                                            /S/
                                                     ANGELA M. HANSEN
7                                                    Assistant Federal Public Defender

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28